UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Gregory F. Ruble, | ) | Case No. 1:07CV3521 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | [Resolves Doc. 44] |
| Alcoa, Inc., | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendant. | ) | AND ORDER |

This matter is before the Court upon Defendant Alcoa, Inc's motion for summary judgment. Doc. 44. Plaintiff Gregory Ruble has opposed the motion, and Alcoa has replied. For the reasons stated herein, the motion is GRANTED.

**I.     Facts**

Ruble began working as an electrician with Alcoa in 1998. Generally, he worked the night shift from 10:30 p.m. to 5:45 a.m. He was working this precise shift during the overnight from June 27, 2007 to June 28, 2007. As a part of his responsibilities, Ruble was occasionally required to perform work on the Auto Etch Line in Building 114 ("the etch line"). On the etch line, products made of aluminum are etched through the use of chemicals. Nitric acid is often the chemical used to accomplish this etching. The nitric acid is stored in two large chemical baths in the etch line room. Cranes are used to transfer loads from tank to tank on the etch line. Once a load is properly

positioned over one of the tanks, an etch basket – consisting of a carbon steel spreader beam suspended by stainless steel cables – lowers the load into one of the acid baths.

At 11:45 p.m., Ruble was called to the etch line. At roughly 11:15 p.m., an etch line operator had seen a flash and heard a "boom" on the etch line. Ruble examined the area and realized a fuse had blown. Ruble then inquired of the etch line operator whether there were any problems with the etch line. The operator informed him that there were no problems. Ruble then reported to another area of the plant for other work for a brief period of time. Ruble returned to the etch line at roughly 12:30 a.m. on June 28. At that time, Ruble recognized that the electrical short had also damaged a tracking switch and a section of power rail. Because of the extent of the required repair, Ruble contacted his supervisor, Edward Andonian. Andonian informed Ruble that he would summon another employee, Robert Williams, to assist with the repairs.

Williams arrived shortly thereafter and began to assisting with the work on the etch line. Roughly ten to fifteen minutes after starting the work, Williams left the etch line to retrieve a respirator and informed Ruble that he was doing so. Williams returned with the respirator and continued to work side-by-side with Ruble on the etch line until 2:30 a.m. Around that time, Andonian entered the etch line to check on the progress of the repairs. At that time, Andonian noticed that cable lines were down and appeared to be entering one of the nitric acid tanks. While Andonian contends that he did not smell any fumes, he noticed some minor bubbling in the tank. As a precaution, Andonian removed Ruble and Williams from the etch line. Ruble then took his lunch break. Following his own walk-through, Andonian determined that the etch line was safe and requested that Ruble return to finish his work. Ruble returned and worked on the etch line from roughly 3:00 a.m. until his shift ended. Other electricians then finished the repairs during the next shift at the plant.

Ruble next returned to work his shift on June 29, 2007. However, shortly after starting his shift, he reported to the infirmary and was later transported to the hospital via ambulance. Ruble suffered permanent damage to his respiratory system as a result of exposure to toxic vapors. Ruble is now permanently disabled, cannot perform many basic household chores, and requires supplied oxygen. As a result, Ruble filed the instant suit, asserting an employer intentional tort claim. The Court now resolves Alcoa's motion for summary judgment on that claim.

## II. Legal Standard for Summary Judgment

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(a). The initial burden of showing the absence of any "genuine issues" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former Fed.R. Civ.P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. (quoting former Fed.R. Civ.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id*. at 252. Moreover, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp*., 53 F.3d 146, 150 (6th Cir. 1995). Moreover, Fed.R. Civ.P. 56(e) states as follows:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

3

…

(2) consider the fact undisputed for purposes of the motion; [or]

(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]

Accordingly, summary judgment analysis asks whether a trial is necessary and therefore is appropriate when there are no genuine issues of fact. *Anderson,* 477 U.S. at 250.

### III. Legal Analysis

Under Ohio law, employees are generally limited to the remedy provided under the Workers' Compensation Act for injuries sustained in the workplace. Revised Code § 4123.74. A limited exception exists under Revised Code § 2745.01, which permits an employee to recover for an employer intentional tort as follows:

> (A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.
>
> (B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.
>
> (C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

The Ohio Supreme Court recognized that while this revised statute does not eliminate the common-law cause of action for an employer intentional tort, it constrains such an action. *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 263 (Ohio 2010). As that court explained, "the General Assembly's intent in enacting R.C. 2745.01, as expressed particularly in 2745.01(B), is to permit

4

recovery for employer intentional torts only when an employer acts with specific intent to cause an injury, subject to subsections (C) and (D)." *Id.*

> Even when an employer is aware of a dangerous condition and fails to take action to correct the situation, such conduct does not meet the statutory requirements without evidence of an actual intent to cause injury. *See Hubble v. Haviland Plastic Prods. Co.*, 3d Dist. No. 11–10–07, 2010–Ohio–6379, 2010 WL 5541117, ¶ 9. Also, the failure to provide protective equipment and the failure to adequately train and supervise do not rise to the level of a deliberate intent to cause injury. S*ee McCarthy v. Sterling Chems., Inc.*, 193 Ohio App.3d 164, 2011–Ohio–887, 951 N.E.2d 441, ¶ 14 (1st Dist.); *Fickle v. Conversion Technologies Internatl., Inc.*, 6th Dist. No. WM–10–016, 2011–Ohio–2960, 2011 WL 2436750, ¶ 48. Further, alleged deficiencies in training, safety procedures, safety equipment, instructions, or warnings, have been found to show recklessness, but are insufficient to create a genuine issue of material fact as to deliberate intent. S*ee Roberts v. RMB Ents., Inc.*, 12th Dist. No. CA2011–03–060, 2011–Ohio–6223, 2011 WL 6017958.

*Meadows v. Air Craft Wheels, L.L.C.*, 2012 WL 253344, at *5 (Ohio Ct. App. Jan. 26, 2012).

In the instant matter, Ruble's case focuses upon the knowledge of Andonian, the sole managerial agent of Alcoa that is relevant to the Court's review. Alcoa has argued in its briefing that Andonian had no direct knowledge that a spreader beam had fallen into the nitric acid bath. As a result, Alcoa contends that it had no knowledge of the danger that existed on the etch line, let alone sufficient knowledge to warrant a finding that it specifically intended to injury Ruble. Upon a review of the record, the Court agrees.

Throughout his deposition, Andonian repeatedly denied smelling any fumes on the etch line and denied ever seeing any red fuming that would indicate that the spreader beam was reacting with the nitric acid. Andonian also swore that when he first examined the etch line with Ruble, Andonian never looked to see whether any parts had fallen into the nitric acid. It was not until 2:30 a.m. that Andonian decided to remove Ruble from the etch line. Andonian swore that this was a precautionary measure because he saw minor bubbling in the nitric acid tank. Andonian also stated that he could still not be certain that a spreader beam had fallen into the nitric acid tank because it is not possible to see into the bottom of the tank.

Ruble has offered no evidence that would undermine Andonian's sworn testimony. It appears that Ruble seeks to attack Andonian's testimony on several grounds. First, Ruble seeks to impute knowledge to Andonian from several sources. Williams reported seeing a "funky cloud" in the etch room when he visited the infirmary to retrieve a respirator. Ruble also appears to contend that the etch line operator was aware that the spreader beam was in the acid tank and should have reported the incident. However, the undisputed evidence is that Andonian was *never* informed of these alleged facts prior to him removing Ruble and Williams from the etch line. As knowledge can only be imputed to a company through senior management, Williams' observation[1] and the alleged observation of the etch line operator cannot be imputed to Alcoa. *See Weimerskirch v. Coakley*, 2008 WL 928396, at *3 (Ohio Ct. App. Apr. 8, 2008).

Ruble also contends that summary judgment is inappropriate because Andonian knew of a specific danger as evidenced by the fact that he removed Ruble and Williams from their work on the etch line. Ruble contends that Andonian's subsequent decision to order Ruble to return to work on the etch line satisfied the intent to injure standard. The record, however, does not support this conclusion.

Andonian's deposition makes clear that he removed Ruble from the etch line only as a precaution. Ruble is correct that Andonian admitted that he knew that a chemical reaction with the nitric acid could be an irritant and harmful. However, Andonian never admitted that he knew such a reaction was occurring. Instead, Andonian indicated that he saw minor bubbling that he thought may be evidence of some chemical process. More important for the Court's consideration, Andonian testified during deposition that he did not order Ruble to return to work on the etch line until the nitric tank was "as calm as that lake." Doc. 32-2 at 18. In other words, Andonian did not order Ruble to return to work until the evidence of any chemical reaction no longer existed.

---

[1] The Court would also note that Williams admitted in his deposition that the "funky cloud" was a white vapor cloud that was present on the etch line during normal operations.

6

Ruble's remaining arguments are also unavailing. For example, Ruble's contentions that Andonian and Alcoa committed OSHA violations does not support a claim of specific intent to injure. Assuming *arguendo* that any such violations occurred, they do not support a finding that Andonian had *any* knowledge of a dangerous situation and required Ruble to work despite that knowledge.

Similarly, while the Court is not convinced that Ruble's expert's report is admissible, it does nothing to change the Court's analysis. The focus of the Court's inquiry is on Alcoa's knowledge, as imputed to it through management. All of the evidence before the Court suggests that management had no direct knowledge of the dangerous situation that Ruble was exposed to while working on the etch line.

As with the facts of nearly every employer intentional tort case, a tragic accident occurred. Ruble has been permanently damaged. Those facts are not in dispute. However, there is simply no evidence that Alcoa had knowledge of the dangerous situation and still compelled Ruble to work in such an environment. For that reason, Ruble's argument that Alcoa misrepresented the nature of the hazard likewise fails. Andonian ordered Ruble to return to the etch line once he no longer visibly observed signs of a chemical reaction. In hindsight, there is little question that Andonian and Alcoa could have done more to ensure that the etch line was safe.[2] However, even if this Court were to conclude that such acts were negligent or even reckless, they would fall well short of the intent to injure standard required under Ohio law.

Finally, Ruble contends that Alcoa's failure to enforce its own safety procedures is the functional equivalent of removing a safety guard, creating a presumption of intent to injure. First, the record does not support that policies were violated. Ruble again assumes that Alcoa had

---

[2] The Court similarly agrees that Ruble himself could have done more to ensure his own safety. Williams' acts made it clear to Ruble that respirators were available. Ruble chose to work without such a device. As such, both employer and employee could have taken steps to alleviate risk – unfortunately, neither did.

7

knowledge of a fuming emergency and failed to act. The record, however, simply does not support this fact. Moreover, while Ruble contends in his brief that workers were instructed to perform work without respirators, this fact is directly contradicted by his own testimony in which he admits that he was never instructed not to wear a respirator. In that regard, Ruble's claim is similar to that of the plaintiff in *Meadows*. In *Meadows*, the plaintiff "acknowledged in his deposition that safety equipment, including safety jackets and face masks, was available. He chose not to wear the personal protective equipment provided. As he stated in his deposition, 'Been working there for so many years, didn't see the reason to wear it.'" *Meadows*, *supra*, 2012 WL 253344 at *3. Similarly, the *Meadows* court distinguished its holding from a prior case in which "the employer had given specific directives that placed the employee in harm's way despite being specifically warned of the dangers involved just prior to the injury occurring." *Id.* (citing *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 2011 WL 1326374 (Ohio Ct. App. Apr. 7, 2011). The same logic applies here. Safety devices were available and Ruble knew of their existence. He was never instructed not to use one – instead, he voluntarily chose not to utilize a respirator. Thus, the record simply does not support his claim of a specific intent to injure.

Ruble's claims are certainly understandable. He worked for Alcoa for nearly a decade and is now permanently disabled from an on-the-job injury. However,

> "even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering employees to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, wilfully violating a safety statute, failing to protect employees from crime, refusing to respond to an employee's medical needs and restrictions, or withholding information about worksite hazards, the conduct still falls short of actual intention to injure that robs the injury of accidental character."

*Kaminski*, 125 Ohio St.3d at 273, n. 16 (quoting 6 Larson's Workers' Compensation Law (2008), Section 103.03). The facts herein are regrettable, but they do not approach the standard necessary to "rob[] the injury of accidental character."

8

**IV. Conclusion**

Alcoa's motion for summary judgment is GRANTED.  The complaint is hereby dismissed.

IT IS SO ORDERED.


DATED: March 7 2012                     /s/ John R. Adams
                                       JOHN R. ADAMS
                                       UNITED STATES DISTRICT JUDGE